UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MONA G. DUHON                                        CIVIL ACTION

VERSUS

SOUTHERN (SCRAP) RECYCLING            NO.: 14-00383-BAJ-EWD

RULING AND ORDER

Before the Court is **Southern Recycling LLC's Motion for Summary Judgment (Doc. 39)** filed by Southern Recycling, LLC ("Defendant" or "SOREC").[1] In its motion, Defendant seeks dismissal of Mona G. Duhon's (hereinafter "Plaintiff") Title VII claims pursuant to Federal Rule of Civil Procedure ("Rule") 56. Plaintiff opposes the motion. (Doc. 45). Defendant filed a reply memorandum. (Doc. 50). Oral argument is not necessary. Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1343. For the reasons that follow, Defendant's motion is **GRANTED**.

## I. BACKGROUND

This is an employment discrimination action brought by Plaintiff against Defendant pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). Generally, Plaintiff's Amended Complaint alleges that through her employment with Defendant, she was subjected to sexual harassment, a hostile work environment, and retaliatory discharge. (*See* Doc. 15).

---

[1] In her Original Complaint, Plaintiff incorrectly identified Defendant as Southern (Scrap) Recycling. (Doc. 1). This error was corrected in Plaintiff's First Supplemental and Amended Complaint. (Doc. 15). Thus, all references to Defendant concern Southern Recycling, LLC.

1

Plaintiff was hired as a truck driver by Wilbert Johnese, Sr. ("Mr. Johnese") on March 5, 2013. (Doc. 15 at p. 1). Mr. Johnese was a subcontractor for Brent Trucking Co., Inc. ("Brent Trucking"), which was, in turn, a subcontractor for Defendant. (Doc. 39-5 at p. 2). Plaintiff's primary job duty during her employment with Mr. Johnese included hauling and delivering scrap metal to and from Defendant's junk yards. (Doc. 15 at p. 4). This was not her exclusive job duty, however, as Mr. Johnese had required Plaintiff to haul material for one of the dirt or gravel companies he worked with. (*See* Doc. 39-2 at pp. 7 – 8).[2] To assist her in performing her job duties with SOREC, Defendant's employee Vicky Campbell provided Plaintiff with a hand-held computer and other necessary equipment and notified Plaintiff of when and where to pick up or deliver scrap metal. (Doc. 15 at p. 2). Plaintiff was not otherwise compensated or supervised by Defendant or any of its employees. (Doc. 39-3 at p. 1).

Soon after she began working for Mr. Johnese, Plaintiff alleges to have been sexually harassed by him on numerous occasions. This harassment, according to Plaintiff, included unwelcome verbal remarks, unwanted touching and on one occasion an attempt to spread her legs. (Doc. 15 at pp. 6 – 7). When Plaintiff rejected Mr. Johnese's advances, he would mistreat her and verbally abuse her. (*Id.*). Because of the severity of the alleged harassment Plaintiff suffered, she resigned from her position with Mr. Johnese on May 20, 2013. (Doc. 39-2 at p. 68).

---

[2] Specifically, during her deposition, Plaintiff recounted at least one instance in which Mr. Johnese called on her to make deliveries to a company other than that of Defendant. (Doc. 39-2 at pp. 7 – 8). However, Plaintiff "did not have time" to make the delivery. (*Id.*) It is unclear from her deposition testimony whether Plaintiff's unavailability was because she was preoccupied making deliveries for Defendant or was tending to other matters.

Following her resignation, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about June 24, 2013, and received a right to sue letter on or about March 24, 2014. (Docs. 15 at p. 1, 39-3 at p. 3). Plaintiff filed the instant action against Defendant on June 22, 2014, alleging that she was subjected to sexual harassment and retaliatory discharge by Mr. Johnese. (Doc. 1). Defendant filed a Motion to Dismiss Plaintiff's original Complaint, and Plaintiff filed an Amended Complaint against Defendant on May 28, 2015, alleging that Defendant is liable for Mr. Johnese's actions as a joint employer of Mr. Johnese. (Doc. 15). Defendant filed the instant motion on August 30, 2016, arguing that it was never Plaintiff's employer and, even if it was a joint employer with Mr. Johnese, the alleged acts of harassment did not rise to an actionable level under Title VII. (Doc. 39-1). Additionally, Defendant argues that Plaintiff failed to exhaust administrative remedies regarding her claim of retaliatory discharge. Because of this, Defendant contends that summary judgment of Plaintiff's claims is appropriate.

## II.    LEGAL STANDARD

Pursuant to the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether the movant is entitled to summary judgment, the court views the facts in the light most favorable to the nonmovant and draws all reasonable inferences in the nonmovant's favor. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

After a proper motion for summary judgment is made, the non-movant "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal citations omitted). At this stage, the court does not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), cert. denied, 502 U.S. 1059 (1992). However, if "the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor," the motion for summary judgment must be denied. *Id.* at 1263.

On the other hand, the nonmovant's burden is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal quotations omitted). Summary judgment is appropriate if the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### III.  DISCUSSION

In its motion for summary judgment, Defendant contends that it did not have an employment relationship with Plaintiff. (Doc. 39-1 at p. 7). Specifically, Defendant argues that it was not a joint employer of Plaintiff with Mr. Johnese because: (1) Mr. Johnese, and not Defendant, was responsible for hiring and firing Plaintiff, (2) Defendant did not directly administer disciplinary procedures against Plaintiff, (3)

4

Defendant did not schedule or maintain Plaintiff's hours, handle the payroll for Plaintiff, or provide insurance to Plaintiff, and (4) Defendant was not Plaintiff's supervisor. (Doc. 39-1 at pp. 9 – 10). Because of this, Defendant maintains that it cannot be liable to Plaintiff under Title VII.

In the alternative, Defendant argues that even if the Court finds that issues of fact exist regarding whether it was Plaintiff's employer during her tenure with Mr. Johnese, Plaintiff's allegations of harassment by Mr. Johnese do not rise to the level of actionable sexual harassment under Title VII. (Doc. 39-1 at p. 10). That is, Defendant contends that Mr. Johnese's alleged actions were not so severe and pervasive such as to give rise to a valid Title VII claim. (*Id.*). Finally, Defendant asserts that Plaintiff failed to exhaust administrative remedies with respect to her retaliation claim by omitting an allegation of retaliatory discharge in her complaint to the EEOC. (Doc. 39-1 at p. 18).

Plaintiff counters that Defendant was, in fact, a joint employer with Mr. Johnese because it gave her the tools necessary to make scrap metal deliveries to and from its work site and otherwise controlled how those deliveries were made. (Doc. 45 at pp. 1 – 2).[3] Further, Plaintiff contends that Mr. Johnese's actions began

---

[3] Plaintiff's memorandum in opposition indicates that she "was under the direction of Ms. Campbell or another SOREC operator" whenever she was on Defendant's scrap metal yard. (Doc. 45 at p. 1). However, in her deposition, Plaintiff clearly indicated that she was not supervised by any of Defendant's employees. (Doc. 39-2 at p. #). To the extent this statement and any portion of the supporting declaration may be construed as asserting that Defendant's employees directly supervised Plaintiff at any time, it will not be considered as creating an issue of material fact, as the U.S. Fifth Circuit Court of Appeals has instructed that a party may not create a genuine issue of material fact with an affidavit that contradicts prior deposition testimony. *Thurman v. Sears, Roebuck & Co.*, 952 F.2d 128, 136-37 n. 23 (5th Cir.), cert. denied, 113 S.Ct. 136 (1992); *Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 233 n. 9 (5th Cir.1984).

immediately after she became his employee and were pervasive enough thereafter to give rise to an actionable Title VII claim. (Doc. 45 at p. 2). Lastly, Plaintiff argues that although she did not check the "retaliation" box in her EEOC charge or use the term "retaliation" when describing the complained-of offenses, the explanatory text in the EEOC form sufficiently alleged retaliatory discharge such that a reasonable investigator would have realized this allegation. (Doc. 45 at p. 4).

## A. EXHAUSTION OF ADMINISTRATIVE REMEDIES ON RETALIATION CLAIM

Defendant contends that summary judgment should be granted on Plaintiff's Title VII retaliation claim because she did not specifically identify retaliatory discharge as a claim in her EEOC Charge of Discrimination. "Under Title VII . . . a plaintiff must exhaust administrative remedies before pursuing employment discrimination claims in federal court." *Garcia v. Penske Logistics, L.L.C.*, No. 15-40061, 2015 WL 6688141, at *2 (5th Cir. Nov. 2, 2015) (*citing Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002)). "Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." *Taylor*, 296 F.3d at 379. When a plaintiff files a charge with the EEOC, the "scope" of the charge is to be construed liberally. *Clark v. Kraft Foods, Inc.*, 18 F.3d 1278, 1280 n.7 (5th Cir. 1994) (*citing Fellows v. Universal Restaurants, Inc.*, 701 F.2d 447, 451 (5th Cir. 1983)). Nonetheless, the ultimate "scope" of the charge is limited to the "scope" of the EEOC investigation, which can "reasonably be expected to grow out of the charge of discrimination." *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006) (*quoting Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)).

6

In her EEOC Charge of Discrimination, Plaintiff identified sex discrimination as the basis of her complaint. (Doc. 39-3). However, Plaintiff continued by explaining that after enduring uninvited advances by Mr. Johnese and subsequently reporting these advances to one of Defendant's employees, she was terminated without explanation. (*Id.*) Thus, the Court can surmise that an EEOC investigation into retaliatory discharge would have reasonably grown out of the initial investigation into Plaintiff's allegations of sexual harassment and discrimination. *Pacheco*, 448 F.3d at 789. On its face, the sexual discrimination claims as expressly identified in the EEOC Charge of Discrimination form are connected to potential claims of retaliation as described in the same document. As such, the scope of the charge includes potential retaliation, and summary judgment is not required for Plaintiff's failure to satisfy a technicality by checking the "retaliation" box on the form. *Id.*

## B. JOINT EMPLOYER UNDER TITLE VII

Defendant argues that it is not liable to Plaintiff for Mr. Johnese's actions because it is not a joint employer of Plaintiff. (Doc. 39-1). Because Title VII prohibits discrimination in the employment context, generally only employers may be liable under Title VII. *See* 42 U.S.C. Sections 2000e-2(a), 2000e-5; *see also Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir.2007) (*citing Oden v. Oktibbeha Cnty., Miss.*, 246 F.3d 458, 462 (5th Cir.2001)). Thus, to establish Title VII liability on the part of a particular defendant, the plaintiff must prove both that the defendant meets Title VII's definition of "employer," *i.e.*, "a person engaged in an industry affecting commerce who has fifteen or more employees ..., and any agent of such a

person....," *Muhammad v. Dallas Cnty. Cmty. Supervision & Corrs. Dept.*, 479 F.3d 377, 380 (5th Cir.2007) (*quoting* 42 U.S.C. § 2000e(b)), and "that an employment relationship existed between him and that defendant." *Karagounis v. Univ. of Tex. Health Science Center at San Antonio*, No. 97–50587, 1999 WL 25015, at *2 (5th Cir.1999) (*citing Deal v. State Farm County Mutual Ins. Co.*, 5 F.3d 117, 118 (5th Cir.1993)).

The parties disagree about whether an employment relationship existed such that Defendant may be sued under Title VII. Plaintiff admits that Mr. Johnesse was her primary employer at all relevant times and that Defendant did not hire her to drive for its scrap metal company exclusively. (Doc. Cite; Doc. 39-2 at p. 13). However, this admission is not dispositive as to Defendant's liability, as Plaintiff asserts that Defendant is liable as a joint employer with Mr. Johnese. (Doc. 45 at p. 1). Both parties seem to acknowledge that even if a company is not a plaintiff's formal employer, it may still be a covered entity under Title VII if it acted as a "joint employer."

There are two primary joint employer tests that govern in employment discrimination cases: the "single employer" or "integrated enterprise" test, which asks whether two superficially separate entities should be treated as one entity; and the "joint employer" test, which assumes that the alleged employers are separate entities and assesses whether the degree of control is nonetheless sufficient to treat both as employers. *See E.E.O.C. v. Valero Refining-Texas L.P.*, 2013 WL 1168620, at *3 (S.D. Tx. 3/13/13), *citing Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983).

8

Because Plaintiff rightly contends that Mr. Johnese and Defendant are two separate entities, the Court will employ the "joint employer" test to assess whether Defendant is subject to liability under Title VII.[4]

A company becomes "a joint employer when it, 'while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer.'" *Boutin*, 730 F.Supp.2d at 680 (*quoting Virgo*, 30 F.2d at 1360). The Fifth Circuit has not formally defined the control factors to consider. Therefore, this Court will follow the approach of at least three district courts in this Circuit and use the factors set forth by the Second Circuit. *See Boutin*, 730 F.Supp.2d at 680 (*citing AT & T*, 67 F.3d at 451); *Jones v. TV Minority Co.*, No. 3:07–cv–513–WHB–LRA, 2008 WL 4279581, at *4 (S.D.Miss. Sept.11, 2008) (*citing AT & T*, 67 F.3d at 451), *aff'd sub nom. Jones v. Norfolk S. Co.*, 348 F. App'x 970 (5th Cir.2009) (per curiam); *E.E.O.C.*, 2013 WL 1168620, at *4. Those five factors are "whether the alleged joint employer (1) did the hiring and firing; (2) directly administered any disciplinary procedures; (3) maintained records of hours, handled the payroll, or provided insurance; (4) directly supervised the employees; or (5) participated in the collective bargaining process." *AT*

---

[4] As Defendant correctly noted, the Fifth Circuit has not expressly articulated under what circumstances a "joint employer" analysis under Title VII is appropriate. Nor has the Fifth Circuit expressly endorsed the joint employer test. However, it has affirmed the results in recent employment discrimination cases in which the district court applied the joint employer test. *See Jones v. Norfolk S. Co.*, 348 F. App'x 970, 973 (5th Cir.2009) (per curiam) (upholding district court's application of the joint employer test in a Title VII case on the grounds that plaintiff could not prevail under either test); *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 344–45 (5th Cir.2007) (applying the integrated enterprise test and finding the joint employer argument waived, but noting the joint employer "argument clearly lacks merit" because the alleged employer had not retained sufficient control of the plaintiff's employment).

& *T*, 67 F.3d at 451 (*citing Clinton's Ditch Coop. Co. v. NLRB*, 778 F.2d 132, 138–39 (2d Cir. 1985)).

The Court finds that there remain no genuine issues of material fact regarding whether Defendant was Plaintiff's employer, and Defendant is therefore entitled to summary judgment on the issue. Plaintiff was hired and fired by Mr. Johnese, (Doc. 39-5 at p. 15), received compensation exclusively from Mr. Johnese, (Doc. 39-2 at pp. 5, 17), and was not subject to Defendant's disciplinary procedures. Defendant did not maintain Plaintiff's record of hours worked, handle payroll, or provide insurance, nor did Defendant directly supervise Plaintiff, beyond training her on how to use the required equipment to do her job. (Doc. 39-2 at p. 19). Neither party alleges that any collective bargaining process existed.  The undisputed facts demonstrate that Plaintiff was merely an employer for Mr. Johnese who primarily hauled scrap metal to and from Defendant's scrap yard but could have been required by Mr. Johnese to make deliveries for other companies. (Doc. 39-2 at p. 28). Therefore, the Court concludes that Defendant was not Plaintiff's employer.

Plaintiff contends that the Court should instead look at a host of additional factors—collectively known as the "hybrid test"—to determine whether Defendant was her employer. (Doc. 45 at p. 1). These factors include: (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without a supervisor; (2) the skill required in the particular occupation; (3) whether the 'employer' or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the

individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the 'employer'; (9) whether the worker accumulates retirement benefits; (10) whether the 'employer' pays social security taxes; and (11) the intention of the parties. (*See* Doc. 15 at pp. 1 – 6). These factors, though, enable court to assess the degree of control an alleged employer has over an aggrieved employee. *See Schewitzer v. Advanced Telemarketing Corp.*, 104 F.3d 761 (5th Cir. 1997). As such, the Court is satisfied that under the "joint employer" test Defendant's control over Plaintiff was not enough to give rise to an employment relationship for purposes of Title VII.

Nevertheless, even if the Court was to find that Defendant and Plaintiff maintained an employment relationship for purposes of Title VII, such a finding would not automatically impute liability on Defendant for Mr. Johnese's actions. The Fifth Circuit has recently held that "establishing a "joint employer" relationship does not [automatically] create liability in the co-employee for actions taken by the other employer." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 228 (5th Cir. 2015) (parenthetical added) (*quoting Whitaker v. Milwaukee Cnty.*, 772 F.3d 802 (7th Cir.2014)). Rather, "a joint employer must bear some responsibility for the discriminatory act to be liable for [a] ... violation." *Id. See Whitaker*, 772 F.3d at 803 (where Milwaukee County and state's Department of Human Services were alleged to be "joint employers," the court found that Milwaukee County could not be liable

because it "had no involvement in" the employment decisions underlying the
plaintiff's claims and "no authority to override those decisions"); *see also Canon v.
Board of Trustees of State Institutions of Higher Learning of Mississippi*, 133 F.Supp.
3d 865 (S.D. Miss. 9/22/2015).[5]

There is no allegation—nor is there any basis for an allegation—that
Defendant had any involvement in the employment actions and termination decision
at issue. All of Plaintiff's allegations of harassment and retaliatory discharge relate
to actions taken by Mr. Johnese, with whom Defendant had no contractual
relationship and over whom Defendant had no control. Plaintiff's deposition
testimony further acknowledged that no one from Defendant's company ever
mistreated her. (Doc. 39-2 at pp. 32 – 33). Plaintiff has offered no evidence that
Defendant was involved—either directly or indirectly—in any actionable harassment
and retaliatory discharge, nor that Defendant knew of any actionable harassment,
was in a position to do something about it, and failed to do so. Plaintiff does allege
that she had a conversation with Ms. Campbell, one of Defendant's dispatchers, in
which she claimed that Mr. Johnese called Plaintiff a "B." (Doc. 39-2 at p. 75).
However, Plaintiff never discussed any of the other alleged incidences with Ms.
Campbell. (*Id.*) Additionally, Plaintiff notified Vicki, another of Defendant's non-
managerial employees, that Mr. Johnese called her a "B" and of other equipment-
related problems she was having with Mr. Johnese. (Doc. 39-2 at pp. 80 – 81). Vicki,

---

[5] The Court notes that the Fifth Circuit interprets the language of the ADA consistently with that of
Title VII, *see Carder v. Cont'l Airlines, Inc.*, 636 F.3d 172, 178 (5th Cir.2011), and the statutes similarly
define the term "employer," *compare* 42 U.S.C. § 12111(5) *with* 42 U.S.C. § 2000e(b).

in turn, "told him off once" and stated that Mr. Johnese's actions were just the nature of the beast. (*Id.*) However, Plaintiff has failed to allege or present evidence proving that Defendant had any authority to reprimand Mr. Johnese or to otherwise override his actions. *See Burton,* F.Supp.3d at 874. As such, Defendant is not liable for Mr. Johnese's actions and there remain no genuine issues of material fact regarding Defendant's liability under Title VII.

Because Defendant is not liable as an employer under Title VII for Mr. Johnese's actions, the Court need not address the merits of Plaintiff's sexual harassment and retaliatory discharge claims. *See Turner*, 476 F.3d at 343.

## IV.  CONCLUSION

Accordingly,

**IT IS ORDERED** that **Southern Recycling LLC's Motion for Summary Judgment (Doc. 39)** is **GRANTED**.

Baton Rouge, Louisiana, this __17th__ day of November, 2016.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

13